**AMERICAN FOREIGN INSURANCE ASSOCIATION, Plaintiff-Appellee**

v.

**SEATRAIN LINES OF PUERTO RICO, INC., et al., Defendants-Appellees.**

**No. 81–1825.**

United States Court of Appeals, First Circuit.

Argued May 5, 1982.

Decided Sept. 29, 1982.

---

Alex Gonzalez, San Juan, P. R., with whom Luis M. Angelet Frau, and Dubon, Gonzalez & Vazquez, San Juan, P. R., were on brief, for appellant.

Francisco Castro Amy, San Juan, P. R., with whom Rafael F. Castro Lang, San Juan, P. R., was on brief, for appellee Royal Ins. Co.

Before COFFIN, Chief Judge, PHILLIPS,* Senior Circuit Judge, BOWNES, Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This is an action to determine which of two connecting carriers is liable for losses resulting from an accident occurring while goods were being delivered from the shipper to the consignee.

## I

The dispute on this appeal is between the insurers for the two carriers, appellant Travelers Indemnity Co. and appellee Royal Insurance Co. Appellant's insured, Seatrain Lines of Puerto Rico, Inc. (Seatrain), is a common carrier engaged in the business of transporting goods by water between the United States mainland and Puerto Rico. Appellee's insured, Francisco Vega Otero (Vega Otero), is a common carrier engaged in the business of transporting goods by land within Puerto Rico. Jurisdiction is based on diversity of citizenship.

Seatrain received a shipment of refrigeration freeze-drying machinery and lubricating oil from the shipper, American Cyanamid Co. (Cyanamid) at the port of Weehauken, New Jersey. Seatrain transported this shipment to San Juan, Puerto Rico, where Otero took it for delivery to the consignee. En route to the consignee, one of Vega Otero's trucks tipped over, causing damage to the goods.

The original plaintiff, American Foreign Insurance Association (AFIA), insurer for Cyanamid, filed this action against both Seatrain and Vega Otero. AFIA sought recovery for damage to the goods caused by the negligence of the carriers. The two carriers cross-claimed against each other. Represented by their insurers, the carriers conceded that AFIA was entitled to recover

* Of the Sixth Circuit, sitting by designation.

and the parties agreed upon a figure of $90,000 for damages. Seatrain and Vega Otero disagreed as to which of them should be held liable for the damage. Their insurers each paid AFIA $45,000 and then sought indemnity against each other on the cross-claim.

The case was tried before District Judge Robert R. Merhige, Jr., of the Eastern District of Virginia, sitting by designation. The record consisted of stipulated facts and a "Stipulated List of Facts From Documentary Evidence," in addition to various documents and depositions. Judge Merhige found that the accident was caused by the negligence of Seatrain, the sea carrier, and entered judgment in favor of Vega Otero's insurer, Royal Insurance Co. of Puerto Rico. From this decision, Seatrain's insurer, Travelers Insurance Co., appeals. We affirm.

## II

The factual dispute in this case involves the question of whether the accident was caused by the negligence of Seatrain in stacking and loading the goods, or by the negligence of Vega Otero in approaching a highway bridge from the wrong direction.

The following facts are summarized from stipulated facts. The shipment consisted of ten large wooden boxes of heavy machinery and two wooden boxes of lubricating oil. These boxes were loaded by the forwarding agent onto three platforms owned by Seatrain in Weehauken, New Jersey. The platforms were then loaded aboard Seatrain's ship, the *Transindiana,* which proceeded to Puerto Rico without incident. Upon the arrival of the shipment, the platforms, with the boxes still on them, were unloaded from the vessel and each was mounted on a chassis with wheels. A few days later three Vega Otero trucks arrived to receive the shipment and deliver it to the consignee.

The three Vega Otero truck drivers attached the Seatrain chassis and platforms to their trucks, signed an interchange receipt and inspection report and departed with the shipment. The more direct route to the cargo's destination was by way of Baldorioty de Castro Avenue. In order to gain access to this Avenue from Seatrain's terminal, a truck normally would need to pass under the nearby San Antonio Bridge on Fernandez Juncos Avenue. The cargo on the Seatrain platforms was stacked so high, however, that the Vega Otero drivers knew that they would not be able to pass under the Bridge. They decided to approach the Avenue by going over the Bridge. In order to accomplish this, the drivers blocked off a one-way exit ramp and proceeded the wrong way up the ramp, intending to make a nearly 180° turn at the top to join the stream of traffic. When the first driver reached the top of the ramp and attempted to negotiate this turn, the platform with the cargo tipped onto its side, causing the chassis and truck to overturn. The goods in this lead truck were damaged as a result.[1]

The platforms on which Seatrain had stacked the cargo were known as "heavy-lift" platforms. After the accident, the cargo was transferred to "low bed" trailers, which were more appropriate for shipments of this kind. Specifically, as is evident from the deposition testimony of Seatrain's claims manager at the time of the accident, low bed platforms-trailers are wider and have a lower center of gravity, and they are easier to turn. The parties also stipulated:

> Unless given specific instructions to the contrary, it is the custom and practice of truckers to pick up and transport trailer-load cargo coming by sea in the trailers

1. There is no evidence in the record of any alternative route to Baldorioty de Castro Avenue. In its motion for additional findings of fact and in its appellate brief, appellants ask the courts to take judicial notice of the existence of safer routes. Appellee correctly argues in its appellate brief that it would not be appropriate to take judicial notice of a material, contested fact in the proceedings in the district court or on appeal. Appellee also argues that low-hanging high tension wires made the alternate routes suggested by appellant dangerous. These arguments of counsel cannot substitute for evidence of such a route, and hence we cannot consider what effect the existence of an alternate route, safe or unsafe, would have on the outcome of this case.

of the water carrier in which it is placed and delivered to them and accepted by the trucker at the ship's terminal.

The district judge was presented with a question of cause in fact. Based on the evidence summarized above and other stipulated facts and exhibits, District Judge Merhige concluded that the overturning of the truck was caused by the improper loading of the cargo on heavy lift platforms, rather than by the driver's attempting to make a sharp turn. Judge Merhige found that the risk caused by the distribution of the weight of the cargo within the boxes on the platforms would not be obvious to Vega Otero upon inspection of the chassis, and that Seatrain, in loading and unloading the cargo from the ship, had the opportunity to observe the instability of the cargo. The district judge concluded that Vega Otero's acceptance of the cargo as loaded was not in itself negligent and that it did not cut off Seatrain's duty to load the cargo safely. Finally, the district judge also found that Vega Otero's approach to the San Antonio Bridge, while contrary to traffic regulations, was not a cause of the truck's tipping over. Based on these findings, the district court held that Seatrain was fully liable for the accident and that Royal Insurance Co., Vega Otero's insurer, was entitled to indemnification from Seatrain's insurer.

### III

■ Appellant argues first that the findings of fact of the district court are erroneous, and that the court erred in failing to make certain additional findings.

The entire evidentiary record in the case consisted of two lists of stipulations and 22 stipulated documents, which included photographs of the accident and two depositions. Review of the finding of fact of the district court in this Circuit is governed by the clearly erroneous standard of Fed.R.Civ.P. 52(a), even where, as here, the record consists entirely of stipulated and documentary evidence. *Constructora Maza, Inc. v. Banco de Ponce,* 616 F.2d 573, 576 (1st Cir. 1980); *Custom Paper Products Co. v. Atlantic Paper Box Co.,* 479 F.2d 178 (1st Cir. 1972).

Under this rule, "if the district court's findings, considering the record as a whole, whether based on live or other types of evidence, are reasonably supported, they must stand." *Custom Paper Products, supra,* 469 F.2d at 179.

Applying this principle, we find no error in the district court's finding of fact. Of the many additional findings of fact which, according to appellant, the court erroneously failed to make, some involve facts implicit in or consistent with the stipulated facts and the facts found by the court; some involve inferences which, although permissible in themselves, do not render a contrary inference by the court erroneous; some involve findings for which there is no evidence in the record (*see* n. 1, *supra*); and some involve conclusions of law. None compel the conclusion that the findings of the court are clearly erroneous.

The key finding of what caused the accident required the district court to draw inferences from the record. There is substantial evidence in the record to support these inferences. The finding that the loading of the goods on the high, heavy-lift platforms caused the overturning of the truck was supported by deposition testimony of the former claims manager of Seatrain that loading of these goods on such a platform and chassis would be dangerous, and that a low bed trailer would be more suitable for such cargo. There was also testimony from the deposition of the truck driver that the drivers proceeded carefully and cautiously in approaching the highway bridge from the exit ramp, and that the turn was made very slowly and with ample room for the truck and trailer to enter the highway successfully. This evidence, the evidence that Vega Otero's drivers inspected the trailers, and the stipulated evidence that it was the custom of the parties for the land carrier to accept the goods in the trailers chosen by the sea carriers, support the finding that the driver's unorthodox approach to the bridge was not such negligence as to amount to a cause or the proximate cause of the overturning of the truck. While the same and other evidence might have permitted a contrary conclusion, this

does not change the fact that there existed this substantial, competent evidence in support of the findings of the district judge. We, therefore, cannot say that these findings are clearly erroneous.

## IV

Appellant also contests the legal conclusions of the district court that Seatrain's choice of trailer chassis was a breach of duty to Vega Otero and that Vega Otero did not breach its duty of care by failing to observe the danger during its inspection of the trailers. In this diversity action, it is undisputed that the applicable law is that of Puerto Rico, where the accident occurred and the alleged negligence of both parties took place. The parties have not cited, nor have we found, any controlling Puerto Rico decision regarding the respective duties of carriers under these circumstances. In the absence of such authority, we use our best judgment to determine what law the Puerto Rico courts would apply, looking to the development of the law in other jurisdictions and to other pertinent data such as treatises and the Restatements. *Michelin Tires (Canada), Ltd. v. First National Bank of Boston,* 666 F.2d 673, 682 (1st Cir. 1981); *Jimenez v. Almodovar,* 650 F.2d 363, 367 (1st Cir. 1981); *Bagwell v. Canal Insurance Co.,* 663 F.2d 710, 712 (6th Cir. 1981); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir. 1980); *Foxco Industries, Ltd. v. Fabric World, Inc.,* 595 F.2d 976, 982 (5th Cir. 1979); *Garrison v. Jervis B. Webb Co.,* 583 F.2d 258, 262 n. 6 (6th Cir. 1978). In addition, although we are construing the law as it would be applied in Puerto Rico, we are not bound to principles of civil law but may apply principles of American common law and construction. *Jimenez, supra,* 650 F.2d at 367; *Belaval v. Secretary of the Treasury,* 83 P.R.R. 244, 247 (1961).

While special rules govern the liability of carriers to the original shippers of goods, *see, e.g.,* 49 U.S.C. § 11707 (the former Carmack Amendment to the Interstate Commerce Act) and 46 U.S.C. § 1300 *et seq.* (the Carriage of Goods by Sea Act), ordinary rules of negligence govern this action to determine which of two carriers is liable

for negligence which has concededly engendered liability to the shipper. A carrier is thus liable for damage caused by its breach of duty to use reasonable care in the transportation of the goods. *See, e.g., Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.,* 616 F.2d 619 (2d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980) (each of two carriers held liable as joint tortfeasors, where the negligence of each carrier contributed to the shipper's loss).

We have determined that the district court was not clearly erroneous in finding that the goods were improperly loaded and that the improper loading caused the truck to tip over. We must now determine which of the two (if not both) carriers breached its duty in permitting the improperly loaded goods to proceed in transport. The general rule is that the party with the responsibility for loading the goods will be liable for damage caused by the improper loading of the goods, unless the danger is patently evident upon reasonable inspection of the loaded shipment. In the case law, this situation arises most frequently where the shipper has loaded the goods and the damage subsequently occurs while the goods are in the hands of the carrier. A case remarkably similar to the present one is *Georgia Kraft Co. v. Terminal Transport Co.,* 343 F.Supp. 1240 (E.D. Tenn.1972). In that case, the shipper's employees improperly loaded the carrier's trailer. The carrier's employees inspected the trailer prior to hauling it away, and did not discover the defect in the loading. En route to its destination, the trailer and the truck overturned as a result of a shifting of the load inside the trailer. District Judge Frank W. Wilson of the Eastern District of Tennessee held that the shipper was liable because it had negligently loaded the trailer after assuming the responsibility for loading, and because the improper loading was not known to the carrier's employees nor discoverable by them upon a reasonable inspection of the trailer.

This rule has been applied by other courts to exonerate carriers from liability for damage caused by the negligent loading of goods by a shipper. *See, e.g., Blue Bird Food Products Co. v. Baltimore & Ohio R.*

*Co.,* 492 F.2d 1329, 1332–33 (3rd Cir. 1974); *South Carolina Asparagus Growers' Association v. Southern Railway Co.,* 46 F.2d 452, 454–55 (4th Cir. 1931); *see generally* Annotation, *Liability of Carrier by Land or Air for Damage to Goods Shipped Resulting from Improper Loading,* 44 ALR 2d 993 (1955) and cases cited therein.

The carrier, however, has a duty of reasonable inspection, and courts have held that a carrier would be liable for damages even if the shipper improperly loaded the goods, if the defect in loading was or would have been patent or apparent upon a reasonable inspection, or if the carrier had notice of the defect. *Masonite Corp. v. Norfolk & Western Railway Co.,* 601 F.2d 724, 728–29 (4th Cir. 1979) (remanding to determine whether carrier inspected shipment after carrier had notice of defect in bracing of prior shipments from the same shipper); *Ebasco Services, Inc. v. Pacific Intermountain Express Co.,* 398 F.Supp. 565, 567–69 (S.D.N.Y.1975) (denying summary judgment on issue of whether excessive height of shipment which later collided with top of bridge was patent to carrier); *Association of Maryland Pilots v. Baltimore & Ohio Railroad Co.,* 304 F.Supp. 548, 553 (D.Md.1969) (shipper's improper loading caused carrier's derailment, carrier's inspection was not negligent: "A carrier cannot be held liable for the act of the shipper in loading a car improperly without evidence that the defect was patent and apparent by ordinary observation."); *Automated Donut Systems v. Consolidated Rail Corp.,* —— Mass.App. ——, 424 N.E.2d 265, 269 (1981); *see also,* Annotation, *supra,* 44 ALR 2d 993.

■ Applying these principles to the case before us, we find, first, that Seatrain had a duty to load the goods properly. This duty arises out of the facts that Seatrain undertook to supply the platforms for the cargo and to unload the platforms and cargo and mount them onto the chassis which eventually overturned, and the fact that, according to the stipulation of the parties, it was the custom for Vega Otero drivers to accept shipments as loaded in the trailers supplied by Seatrain. Second, we find that Seatrain breached this duty by loading the goods improperly by mounting them on the chas-

sis likely to overturn upon shifts in the weight of cargo. Third, we find that Vega Otero's drivers made a reasonable inspection of the shipment. There is evidence from a driver's deposition and from the receipt issued to Seatrain that the trailers were inspected by the drivers. However, the boxes containing the cargo were sealed and, therefore, the distribution weight and the nature of the cargo were not obvious or apparent to the drivers upon their inspection, and the drivers did not have actual knowledge of these facts. As Judge Merhige found:

> Vega Otero had no duty to inspect the distribution of the weight of the cargo within the boxes consigned it by Seatrain. Without such an inspection, it would not have been obvious that the cargo as shipped presented an unreasonable hazard, so that any liability on behalf of Vega Otero cannot be premised on its mere acceptance of the shipment from Seatrain. The Court notes that given its control of the loading and unloading of the cargo from on board its ship, Seatrain did have opportunities not available to Vega Otero to observe the cargo's stability.

These findings provide factual support for the conclusions that the accident was caused by a breach of Seatrain's duty to load and prepare the cargo for shipment, and not from a breach of Vega Otero's duty to inspect. These conclusions, together with the findings of the district judge that the accident was caused by the improper loading of the goods and not by Vega Otero's approaching the highway bridge by way of the exit ramp, support the court's determination that Seatrain should bear the full liability for the damage resulting from the accident.

Appellant has also argued that the shipper, Cyanamid, requested the heavy lift platforms for loading and that Seatrain merely supplied them at the shipper's request and direction. This argument however, would have been better raised in the original action as a defense against liability to the shipper. In the present case, where liability to the shipper has been conceded, and where Seatrain has unloaded the cargo

and assumed the additional responsibility of choosing a platform trailer, these alleged facts, given Vega Otero's customary reliance on Seatrain's choice of trailer, cannot relieve Seatrain of liability to Vega Otero.

Finally, appellant argues that its duty was complete upon delivery to Vega Otero, because Vega Otero accepted the goods as the "agent" of the consignee, and not as an additional carrier. This fact would not relieve Seatrain of liability for damage caused by its own negligence, even if the goods have left its control. *Compare Schiff v. Emery Air Freight Corp.,* 332 F.Supp. 1057 (D.Mass.1971) where the carrier's negligent placement of the labels over the directions to freeze the goods caused the consignee's employees to neglect to freeze the goods, and where the carrier was then held liable for the resulting thawing and spoiling of the goods while under the consignee's control.

For these reasons, the judgment of the district court is affirmed.