**FRANKLIN STAINLESS CORPORA-TION, a New York corporation, Appellee,**

v.

**MARLO TRANSPORT CORPORATION, a New Jersey corporation, Appellant.**

No. 82–2011.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1984.

Decided Nov. 14, 1984.

Joseph D. Roberts, Arlington, Va., (Slenker, Brandt, Jennings & Johnston, Arlington, Va., on brief) for appellant.

Fred C. Alexander, Jr., Fairfax, Va., (Boothe, Prichard & Dudley, Fairfax, Va., on brief), for appellee.

Before RUSSELL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The principal issue in this appeal is whether Franklin Stainless Corp. is entitled to indemnity or to contribution from Marlo Transportation Corp. for damages Franklin paid to the victims of a collision between a truck carrying Franklin cargo and an automobile. The district court awarded Franklin indemnity. Concluding that contribution is appropriate, we vacate the judgment and remand the case for further proceedings.

I

Franklin called on Marlo to furnish transportation for coils of stainless steel from New York to Tennessee. Marlo dispatched a trucker, Herbert F. Beshel, with two tractor-trailers to Franklin's warehouse. One of Beshel's employees drove the truck that was later involved in the accident. Franklin strapped each coil, weighing about 3600 pounds, flat on a wooden pallet, "eye-to-the-sky." Franklin's employees loaded 13 pallets down the center of one trailer and 12 down the center of the other. No bracing, chocking, or other measures were taken to secure the cargo, although chocking material was available at the dock for truckers who requested it. Before leaving the warehouse, Beshel told a Franklin employee that he and his driver had never hauled steel coils and inquired whether the load was secure. Franklin's employee assured Beshel and the driver that this was the standard loading method and that there would be no trouble with the load.

Franklin paid Marlo for the transportation, including trucks, drivers, weight, and mileage charges. Marlo had no Interstate Commerce Commission permits either as a common carrier or broker.

Enroute to Tennessee, one of the trucks collided with an automobile. In the personal injury action brought by the victims of the collision, the district court, ruling that Marlo was a broker, dismissed it because

the plaintiffs' evidence failed to establish that it was the principal of the trucker. The jury returned a verdict against Franklin on the claim that improper loading was a cause of the accident and against the trucker on the claims that violation of Interstate Commerce Commission regulations pertaining to loading and of traffic laws pertaining to operation of the truck were also causes of the accident. It awarded nearly $470,000, of which Franklin paid $350,000.

## II

Franklin filed this action against Marlo seeking recovery of the $350,000, its attorney fees in defending the personal injury action, and cargo damages. It contends that Marlo is a common carrier notwithstanding the lack of a permit; that Marlo was negligent; that it failed to comply with regulations pertaining to the proper loading and carriage of cargo; that it breached the contract of carriage; and that the improper loading was open and obvious to the trucker furnished by Marlo. It seeks contractual indemnity or "as a fall-back position" contribution based on Marlo's negligence.

Marlo contends that it is not liable under the theories of either contractual indemnity or contribution. It maintains that collateral estoppel precludes recovery under any theory because in the personal injury action it had been absolved of all liability. In any event, it asserts, it is a broker, not a common carrier. Under its theory of the case, the trucker was an independent contractor whose negligence could not be imputed to it.

The district court denied the plea of collateral estoppel. It held that in the personal injury case there had been no adversary proceeding between Marlo and Franklin with reference to the relationship between them. The district court then found that Marlo held itself out to Franklin as a common carrier. The court acknowledged that Franklin had been negligent in loading the coils in the truck, but it found that the defect in loading was open and obvious. It held that Franklin was entitled to contractual indemnity from Marlo in accordance with the principles set forth in *General Electric Co. v. Moretz*, 270 F.2d 780 (4th Cir. 1959).[1]

## III

An element of collateral estoppel, or issue preclusion, is actual, full, and fair litigation between the parties, especially when they previously were aligned on the same side of an action. *See* Restatement (Second) of Judgments §§ 27 comment a, and 38 comment a; *see generally Otherson v. Department of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983). Franklin did not oppose Marlo's motion for dismissal at the conclusion of the victim's case, and according to the district judge, who presided over both the personal injury action and the present case, Franklin would not have been permitted to argue against Marlo on the issue of Marlo's liability to the victims of the accident. Under these circumstances, it would be unfair to preclude Franklin. We agree with the district court that Franklin is not collaterally estopped from pursuing this action.

---

**1.** The doctrine of contractual indemnity adopted in *Moretz* was derived from *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). But a purpose of the 1972 amendments to the Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. §§ 901–950, was to abrogate this aspect of *Ryan*. *See Cooper Stevedoring Co. v. Kopke, Inc.*, 417 U.S. 106, 113 n. 6, 94 S.Ct. 2174, 2178 n. 6, 40 L.Ed.2d 694 (1974); *Smith & Kelly Co. v. S.S. Concordia Tadj*, 718 F.2d 1022, 1025–27 & n. 4 (11th Cir.1983)("The Rise and Fall of the *Ryan* Indemnity Doctrine"). One court has declined to follow *Moretz*, and another has expressed reservations about it. *See Hobart v. Sohio Petroleum Co.*, 445 F.2d 435, 437 n. 2 (5th Cir.1971); *Georgia Kraft Co. v. Terminal Transport Co.*, 343 F.Supp. 1240 (E.D.Tenn.1972). Because we conclude that *Moretz* is factually distinguishable from the case before us, we have no occasion to decide whether its doctrine of contractual indemnity should yield to contribution according to degree of fault in contests between negligent shippers and carriers who injure third parties.

## IV

■ Federal law defines a motor common carrier as a person holding itself out to the general public to provide motor vehicle transportation. 49 U.S.C. § 303(14), *revised at* 49 U.S.C. § 10102(13); *Brennan v. Schwerman Trucking Co.,* 540 F.2d 1200, 1204 (4th Cir. 1976). Evidence supports the district court's finding that Marlo held itself out to Franklin to be a common carrier. Consequently, we find neither legal nor factual error in the district court's conclusion that Marlo was a common carrier engaged in the transportation of the steel coils and subject to the laws and regulations pertaining to the carriage of goods.

■ Regulations of the Interstate Commerce Commission prohibit a carrier from operating a motor vehicle unless the cargo is properly distributed and adequately secured. 49 C.F.R. § 392.9 (1979). The jury's verdict against Franklin, which under the court's instruction could be based solely on improper loading, establishes conclusively that improper loading and the consequent shift of the cargo was a proximate cause of the accident.

■ Responsibility for obviously improper loading generally rests on the carrier, and it must indemnify the shipper even though the shipper loaded the truck. *General Electric Co. v. Moretz,* 270 F.2d 780 (4th Cir. 1959) (contract of carriage includes right to indemnity); *United States v. Savage Truck Line Inc.,* 209 F.2d 442 (4th Cir. 1953) (principal fault lay with the carrier). Imposition of liability on the carrier and its obligation to indemnify the shipper is subject to an exception arising out of the acts of the shipper. The allocation of responsibility between the shipper and the carrier for improper loading is delineated in *Savage,* 209 F.2d at 445, as follows:

The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

Although *Moretz* applied the theory of contractual indemnity, it did not overrule the act of the shipper exception explained in *Savage.* In both cases, a factual predicate for indemnity was the carrier's knowledge that the shipper had negligently loaded the cargo.[2] Moreover, the act of the shipper may provide a sufficient basis for denial of contractual indemnity. *See Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc.,* 355 U.S. 563, 567, 78 S.Ct. 438, 440, 2 L.Ed.2d 491 (1958); *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.,* 616 F.2d 619, 625 (2d Cir. 1980).

The district court concluded that the act of the shipper exception was inapplicable because it found that the defect in loading the steel coils was open and obvious to the trucker. We must accept this finding unless on review of the entire evidence we are "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ Franklin's loading of the heavy steel coils flat on pallets down the center of the trucks without strapping or chocking was, of course, open and obvious to the trucker. It does not follow, however, that the defect in this manner of loading was open and obvious. The evidence shows that the contrary was true. In addition to the assurances Franklin's employees gave

---

2. "[I]t was shown that agents of [the carrier] inspected the load before the journey was begun and that the driver concluded from his observation that the load was not properly fastened to the truck when he took charge of it." *Savage,* 209 F.2d at 446.

"The uncontradicted evidence in the case showed that [the carrier] transported the goods with knowledge that they were insecurely loaded." *Moretz,* 270 F.2d at 783.

to the trucker, which we have mentioned previously, Franklin's traffic manager testified about the manner in which the coils were regularly loaded. He confirmed that when a trucker would inform Franklin's loaders that he had no experience with shipments of this sort, and thus no particular loading instructions, Franklin's men would load the truck using their standard method, just as they did in this case. He also testified that in his opinion the shipment was loaded perfectly, with no observable danger whatsoever. Furthermore, the trucker was not aware of the defect in loading. Referring to the damage to his tractor, which he attributed to the load shifting, he testified that he would not have accepted the load if he had thought it would damage his equipment.

Moreover, the jury in the personal injury action found that the trucker reasonably relied on Franklin's assurances that the method of loading was safe. The court's charges required this finding in order for the jury to impose liability on Franklin.[3] In contrast, the jury was instructed that the trucker was negligent because he did not comply with the Commission's regulations about inspecting and securing the load, leaving for the jury the question of proximate cause.[4] Thus, the jury's imposition of liability on the trucker was not dependent upon proof that the defect in the loading was open and obvious.

In sum, the record[5] establishes that the defect in loading was not open and obvious to Franklin's employees who had loaded other trucks in the same manner; that Franklin's traffic manager believed that this method of loading was safe, from which the inference reasonably may be drawn that he did not consider the defect open and obvious; that Franklin's employees assured the trucker that the method of loading was proper; that the jury found that the trucker reasonably relied on this assurance; and that the trucker believed the loading was proper. No witness testified that the defect was open and obvious. The jury's finding that the trucker reasonably relied on Franklin's assurance about the safety of the load is tantamount to a finding that the defect was not open and obvious. A trucker could not reasonably rely on assurances that an open and obvious defect in loading was safe. Applying the standard set forth in *U.S. Gypsum*, 364 U.S. at 395, 68 S.Ct. at 541, we are compelled to reject the district court's finding that the defect in loading was open and obvious to the trucker.

Although a carrier may be liable to the general public for damages caused by failure to comply with the Commission's rules, its duty with regard to a shipper, who has assumed the responsibility for loading, is to exercise reasonable care to see that the load is properly secured. *See American Foreign Ins. Ass'n v. Seatrain Lines, Inc.*, 689 F.2d 295, 299–300 (1st Cir. 1982); *Savage*, 209 F.2d at 445. Thus, a shipper who loaded a truck improperly was denied indemnity from a carrier whose driver exercised reasonable care in accepting the loaded truck. *Georgia Kraft Co. v. Terminal Transport Co.*, 343 F.Supp. 1240 (E.D. Tenn.1972)(distinguishing *Savage* and *Moretz*). In another case quite similar to the

---

**3.** The court charged the jury:

Insofar as the negligence of the defendant Franklin Stainless Corporation is concerned, you are told that while the primary duty as to the safe loading of goods being shipped to prevent shifting is on the carrier, that is Beshel and Wood, nevertheless, if a shipper such as Franklin, by its acts or statements, undertakes or assumes responsibility for loading as for example by assuring the carrier that a certain method of loading is safe and normal and the carrier or its employees reasonably rely upon such assurance, then it is the duty of the shipper Franklin to exercise ordinary care to see that the loading is done in a safe

manner, that is, in a manner to prevent unsafe shifting of the load.

If you believe from a preponderance of the evidence that Franklin's employees did so assume or undertake the responsibility for the safe loading and failed to exercise such ordinary care, then Franklin was negligent.

**4.** With respect to the trucker, the court charged: "You are told that [the driver] did not comply with these regulations, and you are told further that that is negligence."

**5.** The record of this action includes the record of the personal injury case.

one before us, the court held whether a carrier acted reasonably in accepting the shipper's mistaken assurances that the height of cargo loaded by the shipper was not excessive presented a question for the trier of fact, precluding grant of the shipper's motion for summary judgment. Distinguishing *Moretz*, on which the shipper relied, the court held that although the height of the load could be observed, it was not as a matter of law an obvious defect, especially since the shipper represented the load to be of permissible height. *Ebasco Service, Inc. v. Pacific Intermountain Express Co.*, 398 F.Supp. 565 (S.D.N.Y.1975).

The trucker's lack of knowledge about the defect in loading and its reasonable reliance on Franklin's assurances distinguish this case from *Savage* and *Moretz* where the shippers were indemnified. Franklin's claim is governed by the principles explained in those cases we have cited that denied indemnity to the shipper.[6] Consequently, we conclude that Franklin is not entitled to indemnity. This brings us to Franklin's alternative claim of contribution.

### V

■ In the personal injury action, Marlo was dismissed because the plaintiffs could not prove that it was the carrier responsible for the transportation of Franklin's steel. In the present action, Marlo's status as a carrier has been established. The proof showed that it undertook to transport the steel coils without complying with the Commission's regulations for properly securing the load and that improper loading was a proximate cause of the accident. Consequently, we conclude that for the purposes of allocating damages resulting

from the accident, Franklin and Marlo should be considered jointly responsible.

■ Allowing contribution in a personal injury maritime case, the Supreme Court said:

The interests of safety dictate that where two parties "are both in fault, they should bear the damage equally, to make them more careful." ... And a "more equal distribution of justice" can best be achieved by ameliorating the common-law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear ·the entire loss, though the other may have been equally or more to blame.[7]

These interests are also served by allowing contribution between an inland shipper and carrier. Thus, noting "a clear trend in the law toward a rule allowing contribution among joint tortfeasors," a court denied indemnity to a shipper from a motor carrier and ordered contribution between the two for damages to a third party caused by their concurrent negligence.[8] Contribution between shipper and carrier is not a novel concept. *Savage* acknowledged that "the equitable principle of contribution is generally recognized ...." 209 F.2d at 446. "Whatever the terminology, the inquiry is always whether the difference in the gravity of the faults of the participants is so great as to throw the whole loss upon one. In such event there is contribution in the extreme form of indemnity." 209 F.2d at 447. Here the difference in fault does not justify imposing all liability for the accident on Marlo. Rather, both Franklin and Marlo should share that burden. Franklin not only improperly loaded the truck but also

---

**6.** *American Foreign Ins. Ass'n v. Seatrain Lines, Inc.*, 689 F.2d 295, 299–300 (1st Cir.1982); *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625 (2d Cir.1980); *Georgia Kraft Co. v. Terminal Transport Co.*, 343 F.Supp. 1240 (E.D. Tenn.1972). *See also Savage*, 209 F.2d at 445 (act of shipper exception).

**7.** *Cooper Stevedoring Co. v. Kopke, Inc.*, 417 U.S. 106, 111, 94 S.Ct. 2174, 2177, 40 L.Ed.2d 694 (1974).

**8.** *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625–26 (2d Cir.1980). The "shipper" was actually a shipowner who had carried the goods at sea and upon docking delivered them to the trucker. For the purpose of analysis, the shipowner was considered to be a shipper. *See* 616 F.2d at 625.

by its assurances misled the trucker into believing the load was safe. Under those circumstances, contribution is appropriate. *See Gordon H. Mooney, Ltd.,* 616 F.2d at 625.

The preferred method of federal contribution is allocation on the basis of comparative fault. In addition to being the most just method, division of damages by degree of fault "imposes the strongest deterrent upon the wrongful behavior that is most likely to harm others." *United States v. Reliable Transfer Co.,* 421 U.S. 397, 405 n. 11, 95 S.Ct. 1708, 1713 n. 11, 44 L.Ed.2d 251 (1975); *see also Smith & Kelly Co. v. S/S Concordia Tadj,* 718 F.2d 1022, 1028–30 (11th Cir. 1983); *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400, 405 (7th Cir.1974). On remand, however, the district court may be unable to measure comparative fault because of the general verdict against the trucker, who was charged with violation of both Interstate Commerce Commission regulations governing loading and traffic laws governing the speed and operation of motor vehicles. In this event, or for any other circumstance that makes it impossible for the district court to fairly allocate damages by degree of fault, the district court may divide the damages equally. *See Reliable Transfer,* 421 U.S. at 411, 95 S.Ct. at 1715.

The judgment of indemnity is vacated, and the case is remanded for entry of judgment in a manner consistent with this opinion. Each party shall bear its own costs.