# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1508
_____

Benny Aragon

*Plaintiff - Appellant*

v.

Wal-Mart Stores East, LP, doing business as Walmart Distribution Center Number 6077; Pallet Companies, Inc., doing business as IFCO Systems, N.A.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: September 26, 2013
Filed: November 13, 2013

_____

Before WOLLMAN, SMITH, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Benny Aragon was injured when pallets fell onto him from a trailer, breaking his leg and ankle. He appeals from the district court's[1] entry of summary judgment

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

in favor of Wal-Mart Stores East, LP (Wal-Mart), and Pallet Companies, Inc., doing business as IFCO Systems, N.A. (IFCO), on his negligence claim. We affirm.[2]

## I.

Aragon had been driving commercial motor vehicles for more than thirty years and was experienced in securing loads with load locks, load bars, and straps. Although he had never before hauled plastic pallets, Aragon had hauled numerous loads of wooden pallets during his career and had used straps or load locks to secure the cargo to prevent it from shifting backwards during transport. Aragon owned load locks and always kept them in the tractor he was driving. According to Aragon, ninety percent of the pallets he had hauled were shrink wrapped.

After a period of driving independently, Aragon began driving for J.B. Hunt Transports, Inc. (Hunt). Hunt provided Aragon with three straps that Aragon used to secure loads. The Hunt straps had clips that attached to the interior sides of Hunt box trailers. While working for Hunt, Aragon was assigned to pick up a box trailer containing shrink-wrapped pallets of reusable plastic containers (RPCs) from Wal-Mart's distribution facility in Moberly, Missouri, and deliver the trailer to IFCO's facility in Bolingbrook, Illinois. IFCO hired Unyson Logistics to coordinate the transportation of its RPCs. Unyson in turn brokered to Hunt the haulage of IFCO's RPCs. IFCO and Unyson had a written agreement that included Carrier Guidelines requiring carriers to supply box trailers for transporting the RPCs and to supply either two load locks or straps for securing the load. Hunt adopted the Carrier Guidelines when it accepted Unyson's offer to act as the carrier of IFCO's RPCs.

---

[2]We deny Aragon's motion to strike and grant Wal-Mart and IFCO's unopposed motion to file a supplemental appendix.

-2-

On October 7, 2010, Aragon arrived at the Moberly distribution center. He proceeded to the Wal-Mart dispatch office, where he was informed about the location of the box trailer and was given the bill of lading. Aragon located the box trailer that was owned by Hunt and that had been loaded by IFCO. Aragon maintains that the trailer was sealed with a yellow plastic seal. Aragon did not inspect or secure the load before hooking the trailer to his tractor. After securing the trailer to his tractor, Aragon drove to the gate of the distribution center. Aragon testified that either he or the security guard broke the seal on the trailer and that Aragon opened the trailer's four-foot-wide right door. Aragon then looked inside the trailer and observed the shrink-wrapped pallets on the trailer's right side. Aragon saw that there were neither straps nor load locks securing the pallets. He did not open the left door of the trailer.

The security guard verified that Aragon had the correct trailer and that the trailer contained the cargo indicated on the bill of lading. Aragon did not inquire about the securement of the load, and he alleges that no one from Hunt, Wal-Mart, or IFCO instructed him regarding the securement of the pallets. After Aragon viewed the load, he closed the trailer door and either he or the security guard sealed the trailer with a second seal. Aragon did not break the second seal or open the trailer doors during the 380-mile drive to Bolingbrook.

Aragon testified that he broke the trailer's seal when he arrived at the Bolingbrook facility. As Aragon opened the left trailer door, pallets fell onto him, knocking him down and causing his injuries. Aragon cannot recall whether an IFCO employee was present when he broke the seal or opened the trailer.

Aragon filed suit against Wal-Mart and IFCO for negligence. Wal-Mart removed the case to federal district court on the basis of diversity jurisdiction. Wal-Mart and IFCO jointly moved for summary judgment, which the district court granted. Aragon appeals, arguing that the district court erred in granting summary judgment to Wal-Mart and IFCO because a reasonable jury could have found (1) that

under the rule set forth in United States v. Savage Truck Line, Inc., 209 F.2d 442 (4th Cir. 1953), Wal-Mart and IFCO owed him a duty that they breached, causing his injuries; and (2) that the two exceptions to a driver's duty to inspect and secure cargo under the Federal Motor Carrier Safety Regulations (the Safety Regulations) apply.

II.

We review a grant of summary judgment *de novo*. BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC, 706 F.3d 888, 893 (8th Cir. 2013). Summary judgment is proper if, after viewing the evidence in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ashanti v. City of Golden Valley, 666 F.3d 1148, 1150 (8th Cir. 2012). Sitting in diversity, we apply the substantive law of the applicable state. Razorback Concrete Co. v. Dement Constr. Co., 688 F.3d 346, 349 (8th Cir. 2012). The parties do not dispute that Missouri law applies. We review the district court's interpretation of state law *de novo*. Id.

Under Missouri law, a negligence claim consists of three elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an actual injury to the plaintiff resulting from the defendant's breach. Lopez v. Three Rivers Elec. Coop., Inc., 26 S.W.3d 151, 155 (Mo. 2000) (en banc). "Whether a duty exists is purely a question of law[,]" suitable for determination on summary judgment. Id. The Supreme Court of Missouri has not addressed whether shippers have a duty of care to secure goods that they have loaded to avoid injury to the carrier or the driver. In the absence of controlling Missouri law, we must predict how the Supreme Court of Missouri would resolve the issue. See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 937 (8th Cir. 2012).

To determine whether Aragon's negligence claim can survive summary judgment, we must first decide whether under Missouri law Wal-Mart and IFCO

owed a legal duty to Aragon. The Supreme Court of Missouri recognizes that a duty of care may be imposed by common law, a controlling statute or ordinance, or a contractual relationship. Scheibel v. Hillis, 531 S.W.2d 285, 288 (Mo. 1976) (en banc). Aragon alleges that Wal-Mart and IFCO were negligent in two ways: first, by improperly loading the cargo; and second, by failing to secure it. Aragon, Wal-Mart, and IFCO have proceeded under the assumption that the Supreme Court of Missouri would apply the Savage rule in determining whether a shipper is liable for a defect in loading. With respect to his allegation that Wal-Mart and IFCO failed to secure the cargo, Aragon contends that a shipper's duty to secure loaded cargo derives from the Safety Regulations.

The Supreme Court of Missouri has not adopted the rule set forth in Savage. Assuming, without deciding, that the Supreme Court of Missouri would adopt the Savage rule, we hold that Wal-Mart and IFCO did not breach their duty to properly load the cargo because a latent defect in loading did not exist. The Savage court summarized its rule concerning the allocation of duty between the shipper and the carrier as follows:

> The primary duty as to the safe loading of property is . . . upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

Savage, 209 F.2d at 445. Two factors are taken into account in determining whether a defect is latent or open and obvious: the experience of the carrier and the presence or absence of any assurances by the shipper regarding the security of the load. Vargo-Schaper v. Weyerhaeuser Co., 619 F.3d 845, 849 (8th Cir. 2010). Although "the obviousness of the absence of a particular method of securing a load, does not necessarily compel a conclusion that the risk created by the missing securement

device is patent[,]" <u>Spence v. ESAB Grp., Inc.</u>, 623 F.3d 212, 220 (3d Cir. 2010), a nonmovant must present evidence that creates a triable question of fact, <u>Crossley v. Ga.-Pac. Corp.</u>, 355 F.3d 1112, 1113 (8th Cir. 2004).

Aragon argues that the defect in securing the load was latent, pointing to the following facts: he lacked experience in hauling pallets of RPCs for Wal-Mart or IFCO; the load was shrink wrapped; the security guard assured him that the load was secured; and the trailer was sealed when he hooked it to his tractor. With respect to his lack of experience, Aragon conceded that he did not inquire about the securement of the load, despite the fact that he noticed that the pallets were not secured by straps or load locks. That the load was shrink wrapped does not indicate whether the defect was latent or obvious. Aragon testified that almost all of the pallets he hauled were shrink wrapped and that he always had secured them with load locks. Moreover, the security guard's statement, "That's okay[,]" J.A. 176, did not equate to an assurance by Wal-Mart or IFCO regarding the safety of the load. The guard was responsible for ensuring that the cargo and the items listed in the bill of lading corresponded and that all cargo was accounted for. Finally, taking the facts in the light most favorable to Aragon, the load was sealed when he secured the trailer to his tractor, but it is undisputed that the seal was broken before Aragon left the Moberly distribution center. At that time, as Aragon concedes, he had an opportunity to view and inspect the load. Aragon thus has failed to set forth sufficient evidence to show that the failure to secure the load was latent.

Taking these facts in the light most favorable to Aragon, we agree with the district court's conclusion that the evidence is insufficient to create a triable issue of fact, as no reasonable jury could have found that the absence of securing devices was anything other than open and obvious to Aragon. Aragon argues that <u>Franklin Stainless Corp. v. Marlo Transport Corp.</u>, 748 F.2d 865 (4th Cir. 1984), supports his position. In <u>Franklin</u>, the shipper was held liable for injuries caused by the loading

-6-

of heavy steel coils in the center of a trailer without the use of bracing to secure them. Id. at 865-66. Citing the Savage rule, the shipper argued that its defective loading was open and obvious. Id. at 867. The Fourth Circuit concluded that although the manner in which the coils were loaded in the trailer was apparent to the carrier, the defect in the shipper's manner of loading was not necessarily patent. Id. at 868. In reaching this conclusion, the court considered the following factors: the driver of the truck had informed the shipper that he had never hauled steel coils before; the driver had inquired as to whether the load was secure and was assured by the shipper that it was; and the shipper's traffic manager had assured the driver that the method of loading was safe. Id. at 868-69. The court held that the carrier's ignorance regarding the defect in the loading and its reasonable reliance on the shipper's assurances precluded a finding that the defect was apparent. Id. at 869. Unlike the facts in Franklin, Aragon never expressed to the shipper his lack of experience in hauling pallets of RPCs, he never inquired as to whether the load was secure, he never received assurance from Wal-Mart or IFCO that the load was secure, and he never received assurance from Wal-Mart or IFCO that the method of loading employed was safe. Aragon has not offered sufficient evidence in support of his assertions that the visible absence of straps was latent or that he received assurance that the pallets were loaded and secured properly by IFCO.

Next, we must determine whether the Supreme Court of Missouri would conclude that Wal-Mart and IFCO, as shippers, had a duty to secure cargo pursuant to the Safety Regulations. The Safety Regulations place the duty to secure cargo on carriers, reflecting the everyday practice and understanding in the trucking industry that carriers have the final responsibility for the loads they haul. See Vargo-Schaper, 619 F.3d at 849; see also Decker v. New England Pub. Warehouse, Inc., 749 A.2d 762, 766 (Me. 2002). Specifically, the Safety Regulations impose a duty on the carrier to inspect cargo to confirm that it is secure before and during transport of the cargo in a commercial motor vehicle. 49 C.F.R. § 392.9(a)(1), (b)(1)-(3). The Safety

Regulations provide two exceptions to a driver's duty to examine and secure cargo: (1) when the carrier of a sealed commercial motor vehicle has been ordered not to open the seal to inspect the cargo, and (2) when the commercial vehicle has been loaded in a manner that makes inspection of its cargo impracticable. Id. § 392.9(b)(4). Aragon asserts that both of these exceptions apply and give rise to the shipper's duty to secure cargo.

Aragon contends that the first exception applies because the trailer was loaded and sealed before he arrived at the Moberly distribution center. Additionally, he maintains that Wal-Mart's dispatcher instructs drivers not to break the seal on a trailer outside the presence of a security guard. Aragon, however, had the opportunity to inspect the load when the seal was broken and the trailer door was opened at the distribution center gates. Moreover, Wal-Mart and IFCO did not prohibit Aragon from breaking the seal. Aragon testified that Wal-Mart and IFCO did not instruct him about the securement of the load or about who had the responsibility to secure the load. Despite the lack of instructions to the contrary, Aragon argues that the existence of the seal and the requirement that security be present when the seal is broken are sufficient to establish that he was not authorized to open the sealed trailer to secure the load. Notwithstanding this requirement, Aragon had the opportunity to inspect the cargo and assure himself that it was properly distributed and adequately secured, as he was required to do under the Safety Regulations. Despite his opportunity to observe and inspect the cargo, and despite his obligations under the Safety Regulations, Aragon accepted the unsecured cargo. Wal-Mart's requirement that a security guard be present when a seal is broken is insufficient to shift to the shipper the driver's duty to secure the load when the driver has the opportunity to inspect the load.

Aragon also contends that the second exception applies because the inspection of the cargo was impracticable, as it was shrink wrapped. We disagree. Aragon

observed the load and noticed that there were no straps securing it. Aragon had always secured the shrink-wrapped pallets in other loads that he had hauled. Further, Aragon did not open the left trailer door to see whether the pallets on the left were shrink wrapped, nor did he use the straps that Hunt had given him to secure the load.

Aragon has not set forth sufficient facts to show that he was carrying a sealed load and was ordered not to break the seal to secure the load, nor has he established that inspecting the cargo was impracticable. Even assuming these exceptions gave rise to a duty on the part of Wal-Mart and IFCO, Aragon's negligence claim cannot survive summary judgment.

The judgment is affirmed.

_____