PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-4363

CHARLES SPENCE,

Appellant,

v.

THE ESAB GROUP, INC.,

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1:07-cv-00583)
District Judge: Honorable Sylvia H. Rambo

Argued July 15, 2010

Before: FUENTES, VANASKIE and WEIS, Circuit Judges.
(Opinion Filed: October 18, 2010)

William D. George, Esquire (Argued)
Connelly, Baker, Wotring LLP
700 JPMorgan Chase Tower

600 Travis Street
Houston, TX 77002

Counsel for Appellant

Charles S. Marion, Esquire (Argued)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

Justin G. Weber, Esquire
Pepper Hamilton LLP
100 Market Street, Suite 200
P.O. Box 1181
Harrisburg, PA 17108

Kenneth M. Argentieri, Esquire
Duane Morris LLP
600 Grant Street, Suite 5010
Pittsburgh, PA 15219

Counsel for Appellee

OPINION OF THE COURT

2

VANASKIE, Circuit Judge.

This appeal calls upon us to determine whether Pennsylvania law imposes upon a shipper a duty of due care to safely secure the goods the shipper has loaded in a third-party carrier's tractor-trailer. The District Court, concluding that Pennsylvania law did not impose such a duty, awarded summary judgment in favor of the shipper, The ESAB Group, Inc. ("ESAB"), and against the carrier's injured driver, appellant Charles Spence. Because we find that, under the circumstances of this case, Pennsylvania law imposed a duty of care on ESAB, we will reverse the District Court's judgment and remand for further proceedings.

## I. Facts

On May 12, 2005, Spence was injured when his tractor-trailer overturned as he was rounding a turn in Hanover, Pennsylvania. The accident occurred shortly after Spence, an experienced truck driver, picked up a load of cargo from ESAB to transport to Houston, Texas. The cargo – welding supplies manufactured by ESAB – was packaged by ESAB into boxes and cartons, stacked onto pallets, and then stretch wrapped. Spence was on the trailer while ESAB loaded the pallets by forklift onto the trailer. Spence secured the cargo with "load stars" furnished by ESAB. Load stars are small metal cleats that are placed on the floor of the trailer and secure the pallets that are loaded onto them.

Spence had transported welding supplies for ESAB – packaged and loaded the same way as on the day of the accident – on approximately five occasions. On the first occasion, Spence complained to ESAB that he did not like that the load

3

was not blocked and braced, referring to a method of securing cargo which would have required nailing wooden boards to the trailer's floor to completely surround the pallets to safeguard against movement of the cargo during transit. ESAB assured Spence that it never had a problem with any of its loads. Believing that ESAB "knew better" than he about securing ESAB's product, Spence hauled the load without blocking and bracing. (A. 124.)

In addition to utilizing the load star securement devices provided by ESAB, Spence also used a device known as a "load lock" to secure the ESAB cargo. A load lock is an expandable pole with rubber on each end that is wedged between the trailer walls behind the last item in a row of pallets. According to Spence, the purpose of a load lock is to prevent the load from shifting backwards towards the rear doors of the trailer. Spence's employer provided the load lock that he used to secure the ESAB cargo.

Although Spence did not encounter any problems during that first haul of ESAB product, on a subsequent trip, when Spence arrived at his destination, he opened the door of the trailer and saw that the pallets had shifted during transit. Spence does not dispute that only his employer-provided load lock was used to secure the load on this prior occasion.[1] With the

---

[1] Spence explained that on this particular prior occasion, instead of setting the load stars down while ESAB loaded the cargo, he chose to lay down in his tractor's sleeping berth because he was tired. ESAB requires the individual driver to set
(continued...)

exception of that particular load, on all of his prior hauls for ESAB, Spence had secured the cargo with both load stars and a load lock. On none of Spence's hauls for ESAB, including on the day of the accident, was the cargo blocked and braced. Spence's expert testified that it is the industry practice for shippers, not drivers, to block and brace the cargo.

On the day of the accident, because he did not have a load lock with him, Spence secured the cargo only with ESAB's load stars. After the pallets were loaded onto the

trailer, Spence closed, locked, and sealed his trailer doors and signed the bill of lading. Spence then got into the cab of his truck and drove the tractor-trailer away from ESAB's facility. As Spence rounded a curve a short distance from the ESAB facility, his tractor-trailer overturned, causing Spence serious injuries. Spence claims that the accident occurred because the load shifted laterally.

## II. Procedural History

On March 28, 2007, Spence brought suit against ESAB in the United States District Court for the Middle District of Pennsylvania, asserting claims of negligence, negligence per se, and gross negligence. The claims were based on Spence's assertion that the accident was a result of ESAB's failure to secure the cargo it loaded onto the trailer, which, Spence alleged, was a violation of its duty of care to Spence and the

---

[1](...continued)
the load stars down, and will not put them down in the driver's absence.

5

proximate cause of his injuries.

On June 13, 2007, ESAB filed a motion to dismiss the negligence per se claim, which the District Court granted on February 15, 2008.  On September 25, 2008, ESAB moved for summary judgment.  On October 20, 2008, the District Court granted Spence's request for leave to file an amended complaint and stayed consideration of ESAB's summary judgment motion.  On October 27, 2008, Spence filed an amended complaint, which contained five claims:  Negligence, Negligent Failure to Warn, Breach of Assumed Duty, Fraudulent/Negligent Misrepresentation, and Gross Negligence.[2]

ESAB filed an amended summary judgment motion on February 13, 2009.  ESAB argued that, as the shipper, it owed no duty to Spence, the driver.  ESAB cited federal regulations, which ESAB argued "squarely" and "exclusively" place the duty to ensure that cargo is adequately secured on the driver, and not the shipper.  ESAB also cited United States v. Savage Truck

---

[2] We view the "Assumed Duty" claim as a subpart of Spence's negligence claim.  We also note that there is no separate cause of action under Pennsylvania law for gross negligence.  See Hunter v. Squirrel Hill Assocs., L.P., 413 F. Supp. 2d 517, 520 n.2 (E.D. Pa. 2005) ("While Pennsylvania courts acknowledge differing standards of care, they do not recognize degrees of negligence as separate causes of action."); Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 828 (E.D. Pa. 2001) (dismissing separate claim of gross negligence because under Pennsylvania law "'gross negligence' refers to a standard of care, rather than to a separate claim").

Line, Inc., 209 F.2d 442 (4th Cir. 1953), for the common-law rule that the shipper who loads cargo is only liable for defects in loading that are latent and not apparent to the driver. In opposition to ESAB's motion for summary judgment, Spence argued, citing Kunkle v. Continental Transportation Lines, Inc., 92 A.2d 690 (Pa. 1952), that under Pennsylvania law, the shipper, ESAB, owed a duty of care to Spence in both loading and securing the cargo, notwithstanding the fact that Spence admits that under federal regulations he also had a duty to properly secure the load.

On October 13, 2009, the District Court granted ESAB's motion for summary judgment on all five claims of the Amended Complaint. As to Spence's negligence claim, on which the instant appeal centers, the District Court found that Pennsylvania law did not impose on ESAB a duty of care under the circumstances of this case. In this regard, it found persuasive the Federal Motor Carrier Safety Regulations that impose upon the carrier the obligation to safely secure cargo to prevent shifting during transit, citing 49 C.F.R. § 392.9(a) and (b), as well as 49 C.F.R. § 393.100.[3] As to the Pennsylvania

---

[3] In pertinent part, 49 C.F.R. § 392.9(a) and (b) provide:

> (a) General. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless--

(continued...)

7

Supreme Court's holding in <u>Kunkle</u>, the District Court found that it concerned only the shipper's duty of care in relation to loading the cargo, and was thus not controlling on the question of a shipper's duty to secure the load. The District Court also questioned <u>Kunkle</u>'s continuing "vitality," as it was decided before the promulgation of the federal regulations that make the carrier responsible for securing the cargo. Beyond finding <u>Kunkle</u> not to be on point, the District Court concluded that it

---

[3](...continued)

        (1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.

. . . .

(b) Drivers of trucks and truck tractors. [T]he driver of a truck or truck tractor must--

        (1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle[.]

Subsection (c) of 49 C.F.R. § 393.100 provides that "[c]argo must be contained, immobilized or secured . . . to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected."

conflicted with the "prevailing common law duty" announced in Savage that the primary duty to secure cargo rests with the carrier, and the shipper's duty is to avoid latent defects in the way the cargo is secured. Savage, 209 F.2d at 445. The District Court reasoned that because Spence knew that the load was not blocked and braced, he could not show that ESAB had created a latent hazard. The District Court thus concluded that Spence had failed to demonstrate that ESAB owed him a common law duty to ensure that the welding materials were properly secured, and even if Kunkle imposed a duty that the cargo be properly loaded, Spence failed to demonstrate that ESAB breached such a duty. Accordingly, the District Court granted ESAB's motion for summary judgment as to Spence's negligence claims.[4]

## III. Jurisdiction and Standard of Review

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction over the appeal under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary, and we must apply the same standard the district court was required to apply under Federal Rule of Civil Procedure 56(c). Smith v. Johnson & Johnson, 593 F.3d 280, 284 (3d Cir. 2010). Thus, we can affirm

---

[4] The District Court also granted summary judgment in favor of ESAB on the negligent failure to warn and fraudulent/negligent misrepresentation claims of the Amended Complaint. Spence has not challenged the summary adjudication of those claims in this appeal. Accordingly, we will affirm the District Court's summary judgment decision as to those claims.

9

only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In evaluating the evidence, "we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86 (3d Cir. 2008) (internal quotation marks omitted). Furthermore, because the determination of whether a duty of care exists is a question of law, Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993), we have plenary review of the district court's conclusion that ESAB did not owe Spence a duty of care. See Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 62 (3d Cir. 2009).

## IV. Discussion

As a federal court sitting in diversity, we are required to apply the substantive law of the state whose law governs the action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree that Pennsylvania law governs this dispute.

When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source. State Farm Mut. Auto Ins. Co. v. Coviello, 233 F.3d 710, 713 (3d Cir. 2000). In the absence of a controlling decision by the Pennsylvania Supreme Court, we must predict how it would rule if faced with the issue. Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004). In making such a prediction, "we

10

must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." Norfolk S. Ry. Co., 512 F.3d at 92 (internal quotation marks omitted). We must be mindful that "our duty is to apply state law . . . irrespective of what we may regard as its merits," Krauss v. Greenbarg, 137 F.2d 569, 571 (3d Cir. 1943); we may not impose our own view of what state law should be, McKenna v. Pac. Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994), nor "expand state law in ways not foreshadowed by state precedent." City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir. 2002).

"The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1168–69 (Pa. 2000). As explained by the Pennsylvania Supreme Court:

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall

11

public interest in the proposed
solution.

Id.

Pennsylvania has adopted a number of provisions of the Restatement (Second) of Torts to inform the consideration of these factors. One such provision is § 323. See Gradel v. Inouye, 421 A.2d 674, 677 (Pa. 1980) ("Section 323(a) of the Restatement [(Second)] of Torts has been part of the law of Pennsylvania for many years."). That section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). In Feld v. Merriam, 485 A.2d 742 (Pa. 1984), the court indicated that Pennsylvania's application of § 323 is consistent with the following comment to that provision:

12

> [T]his Section applies to any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other's person or things. It applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it.

Id. at 746 (quoting Restatement (Second) of Torts § 323 cmt. a). In Feld, the court noted that these comments are particularly relevant where a party undertakes a task and "possibly fosters a reliance by [the plaintiff] on his efforts." Id. at 747.

Spence's argument in favor of recognition of a duty of care on the part of the shipper in this case is consistent with Pennsylvania's application of § 323. In this regard, Spence does not argue that the shipper's obligation to exercise reasonable care was exclusive. He acknowledges that he had a duty of care insofar as securing the load against lateral movement was concerned. Spence contends, however, that ESAB, as the party who undertook to place the load on his trailer, provided him with securement devices, and assured him that blocking and bracing was unnecessary, also owed a duty of care.

Spence relies primarily on a case that is consistent with

13

the principle expressed in § 323, <u>Kunkle v. Continental Transportation Lines, Inc.</u>, 92 A.2d 690 (Pa. 1952). In that case, Harry R. Kunkle brought suit against Continental Transportation Lines, the shipper for whom Kunkle was transporting cargo when his trailer crashed on a Pennsylvania highway in 1947. <u>Kunkle</u>, 92 A.2d at 690–91. The cargo included a 16,000 pound lithograph machine on the "extreme left" of a trailer on its 6" side, with its 5' 5" width "extending almost to the top of the trailer." <u>Id.</u> at 691. The rest of the cargo loaded on the trailer, consisting of "bulky, light material," weighed about 7,500 pounds. <u>Id.</u> The loading was supervised by an employee of the shipper, while Kunkle sat in the cab of his vehicle, "purposely refrain[ing] from taking any part in the loading operation because the loaders were union men and resented interference on the part of an owner-driver." <u>Id.</u> Before departing with his load, Kunkle noticed that the trailer listed somewhat to the left side, but accepted the assurances of the defendant's dispatcher that the load was "all right." <u>Id.</u> at 691–92. While driving the trailer with the loaded cargo, Kunkle attempted to pass a vehicle, and while doing so lost control of the steering, causing the tractor-trailer to "crash into the inevitable telegraph pole along the road." <u>Id.</u> at 690–91. Kunkle brought suit against the shipper for negligently loading the cargo onto the trailer. <u>Id.</u> at 691. The issue at trial was whether the loading of the trailer or Kunkle's driving caused the trailer to lose balance. <u>Id.</u> The jury agreed with Kunkle, finding that the accident was caused by the shipper's negligence in loading, and not Kunkle's driving. <u>Id.</u> The jury further found that Kunkle was not contributorily negligent in failing to inspect the loading operation. <u>Id.</u>

On appeal, the Pennsylvania Supreme Court found that

14

the shipper could be held liable based upon the manner in which it undertook to place the materials on the trailer, explaining:

> The [shipper]'s employee . . . was aware, or should have been aware, of the remaining items to be loaded, <u>and it was his responsibility to see that no dangerous condition would be created by what was going aboard finally</u>.
>
> Those final items were actually lifted into the trailer by employees of the [shipper] and they should have realized that a proper loading of comparatively light objects would necessitate a redistribution of the cargo in order to effect the proper balance. When they sealed the door of the trailer with 16,000 pounds of a total load of 23,500 pounds concentrated on the left side of the trailer, they were subjecting the plaintiff, who was within the foreseeable orbit of harm, to great danger.

Id. at 691–92 (emphasis added).

By finding the shipper liable, the court in Kunkle necessarily recognized that the shipper had a duty to perform its undertakings in relation to the cargo with due care. Although Kunkle does not establish a special duty of care rule based on

15

the shipper-carrier relationship, or define a particular standard of care to which a shipper must conform in loading and securing cargo, it nonetheless acknowledges that shippers are not exempt from the general duty the law imposes upon all persons who undertake to perform a particular service not to expose others to risks of injury which are reasonably foreseeable. See R.W. v. Manzek, 888 A.2d 740, 747 (Pa. 2005) ("[A] duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others."); Kimble v. Mackintosh Hemphill Co., 59 A.2d 68, 71 (Pa. 1948) ("Although individuals are not required to guard against every risk they conceive to be possible, they are under a legal duty to prevent hazards which they can forecast as possible.").

Although it was Spence who physically secured the load with the load stars and closed and locked the truck, ESAB nonetheless significantly involved itself in the securing of the load. In other words, ESAB went beyond the task of merely loading the product on the trailer. It was, after all, ESAB that supplied load stars as the securement device. Although ESAB had posted a sign at its loading dock saying that it is the driver's responsibility to secure the load, Spence provided evidence that the industry practice is for shippers to block and brace the cargo that they load, and that ESAB at one time had supplied material for blocking and bracing. Spence also provided evidence that supports an inference that ESAB assured him that transportation of the product without blocking and bracing was safe. Spence testified that on his first load for ESAB, he complained about the way the trailer was loaded:

> I told them that I did not like the
> way that they loaded the trailer. I

16

> didn't like the small pallets. I didn't like it being down the center of the trailer with no blocking, no bracing, nothing but the stars. I did say something about it, and ESAB assured me that they have never had a problem with any of their loads, so I took it that they knew better than I did and hauled the load.

(A. 124.)

In sum, there was evidence that ESAB selected the appropriate securement device, that Spence complained to ESAB concerning the way the cargo was loaded and secured, that ESAB in response stated that it never had a problem with any of its loads, and that Spence relied upon this assurance in using only load stars to prevent lateral movement of the cargo. We must, of course, credit this evidence as true in determining whether summary judgment was warranted. We view this evidence as sufficient to support a reasonable inference that ESAB undertook to participate in assuring that the load was secured properly. Whether it did undertake to assure the stability of the cargo, and if it did, whether it exercised reasonable care in performing this undertaking, are questions for the jury to decide.

Imposing a duty of care on the shipper does not absolve the carrier or its driver of responsibility to assure the stability of the load during transport. As noted above, Spence acknowledges that he, too, owed a duty of care with respect to

17

securing the cargo. All we hold, consistent with <u>Kunkle</u> and §
323 of the Restatement (Second) of Torts, is that the shipper
may also owe a duty of care depending upon the role it assumes
in connection with loading and securing its cargo. Other courts
have reached a similar conclusion. <u>See, e.g.</u>, <u>Locicero v.
Interpace Corp.</u>, 266 N.W.2d 423, 427 (Wis. 1978) ("We hold
that [the state statute] and the federal safety regulations impose
a clear statutory duty on the carrier to secure the load safely, but
they do not relieve those who breach a common law duty of care
from liability for their negligence and their comparative share of
the resulting damages."); <u>Medeiros v. Whitcraft</u>, 931 F. Supp.
68, 74 (D. Mass. 1996) (duty imposed by regulation on the
driver did not relieve shipper of liability for any independent
negligence found by the jury).

Pennsylvania is a comparative fault jurisdiction. Under
Pennsylvania law, a plaintiff's negligence bars recovery only
when it is greater than that of the defendant. 42 Pa. C.S.A. §
7102. Because "it is a rare situation where it can be said that the
plaintiff is more than 50% negligent as a matter of law," <u>Gilbert
v. Consol. Rail Corp.</u>, 623 A.2d 873, 876 (Pa. Commw. Ct.
1993), the assessment of the relative responsibility for the
injuries sustained by Spence is properly left to the jury. <u>See
Gilpin v. Langan</u>, 789 F.2d 1034, 1036 (3d Cir. 1986) ("The
determination that a plaintiff's negligence amounted to fifty-one
percent of the causal conduct and thereby barred recovery, rather
than to forty–nine percent, leading only to a reduction of the
award, is peculiarly a matter on which reasonable minds may
differ."). Consequently, we find that summary judgment on
Spence's negligence claims was not warranted.

This conclusion is not inconsistent with the Fourth

18

Circuit's holding in Savage, the case upon which the District Court placed principal reliance. According to Savage:

> The primary duty as to the safe loading of property is . . . upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

209 F.2d at 445.

Notably, Savage did not hold that the exclusive duty to secure the cargo against movement during transit rests with the carrier. Instead, it recognized that the carrier, the party in the best position to know about the handling characteristics of its vehicles, has the primary obligation to assure that the cargo is loaded in a secure manner. Savage acknowledged that a shipper may have liability when an accident results from movement of goods during transport if the shipper created a non-apparent condition that caused the load to shift.

Here, the District Court found that while the latency of a defect is ordinarily a question of fact, there was no dispute in the case that it was apparent to Spence that the cargo was not blocked and braced. The District Court reasoned that because

19

the absence of blocking and bracing was readily apparent, there was no issue of fact concerning the latency of the alleged defect. However, the obviousness of the absence of a particular method of securing a load, does not necessarily compel a conclusion that the risk created by the missing securement device is patent.

In Franklin Stainless Corp. v. Marlo Transp. Corp., 748 F.2d 865 (4th Cir. 1984), a case applying Savage, a carrier was engaged to transport coils of stainless steel for a shipper. Id. at 866. The shipper loaded the steel coils onto two tractor-trailers, but did not take any measures to secure the cargo. Id. The carrier informed the shipper that he had never hauled steel coils and inquired whether the load was secure. Id. The shipper assured the carrier that it had used the standard loading method and that there would be no trouble with the load. Id. In transit, one of the trucks collided with another vehicle. Id. In a personal injury action brought by the victims of the collision, the jury returned a verdict against the shipper, finding that the improper loading of the truck was a cause of the accident. Id. at 866–67. The shipper sought indemnity or contribution from the carrier based on the carrier's negligence. Id. at 867. The district court acknowledged that the shipper had been negligent in loading the coils, but under Savage, it found that the defect in loading was open and obvious to the carrier, thus absolving the shipper of liability. Id. The Fourth Circuit disagreed: "[The shipper's] loading of the heavy steel coils flat on pallets down the center of the trucks without strapping and chocking was, of course, open and obvious to the trucker. It does not follow, however, that the defect in this manner of loading was open and obvious." Id. at 868. In rejecting the district court's finding that the defect in loading was open and obvious to the carrier, the

20

Fourth Circuit, in part, relied on the evidence that the shipper assured the driver that the method of loading was proper, and that the jury found that the driver reasonably relied on this assurance. Id. at 868–69. The Fourth Circuit noted that "[t]he jury's finding that the trucker reasonably relied on [the shipper's] assurance about the safety of the load is tantamount to a finding that the defect was not open and obvious." Id. at 869.

Franklin is in harmony with § 323 of the Restatement (Second) of Torts. In this regard, Franklin recognized that a shipper's assurances that cargo has been properly secured may establish an "undertaking" of services to which a duty of care attaches. The Fourth Circuit indicated that the evidence must be such as to establish that the shipper undertook some role in securing the load, finding that this requirement for liability was assured through the following jury charge:

> Insofar as the negligence of the defendant [shipper] is concerned, you are told that while the primary duty as to the safe loading of goods being shipped to prevent shifting is on the carrier . . ., nevertheless, if a shipper . . ., by its acts or statements, undertakes or assumes responsibility for loading as for example by assuring the carrier that a certain method of loading is safe and normal and the carrier or its employees reasonably rely upon such assurance, then it is the duty

21

> of the shipper . . . to exercise
> ordinary care to see that the loading
> is done in a safe manner . . . .

Franklin, 748 F.2d at 869 n.3 (emphasis added).

It is thus clear that even under the Savage rule summary adjudication of the negligence claims was not warranted. That is, there are issues of material fact as to whether the lack of blocking and bracing was a latent defect. See Grantham v. Nucor Corp., No. 2:07-CV-229, 2008 WL 3925211, at *3 (D. Utah Aug. 20, 2008) (finding genuine issue of material fact existed as to whether defect in loading was latent where driver lacked experience hauling products from shipper's facility and where shipper's employee told the driver, in response to driver's concerns about the load's safety, that he had been loading trucks for quite a while and that he knew what he was doing); Syngenta Crop Prod., Inc. v. Doyle Brant, Inc., No. 3:06-CV-84-S, 2008 WL 167293, at *3 (W.D. Ky. Jan. 16, 2008) (court could not conclude as a matter of law that truck driver did not rely on shipper's assurances that the load was secure and therefore an issue of fact existed as to whether the alleged defect in the shipper's loading of the trailer was apparent); Ebasco Servs., Inc. v. Pac. Intermountain Express Co., 398 F.Supp. 565, 568–69 (S.D.N.Y. 1975) (question of whether the excessive height of a shipment presented a patent defect was "not one for resolution by summary judgment," in part, because evidence that shipper's employees represented the load to be of proper height raised "material issues of fact bearing on the ultimate issue of allocation of liability between" the shipper and the carrier); Smart v. Am. Welding & Tank Co., 826 A.2d 570, 575 (N.H. 2003) ("[W]hether a defect in loading is obvious through

22

ordinary observation or concealed is a question of fact."). More importantly, as suggested by Franklin, liability may be imposed on the shipper where (a) it provides assurances concerning the manner of loading and securing the cargo, and (b) the driver's reliance upon such assurances is reasonable. As noted above, there is sufficient evidence on each of these factors to preclude summary judgment.

## IV. Conclusion

Those who undertake the task of loading, securing, and hauling cargo on tractor-trailers have a duty to exercise due care to protect property and persons from the risk of harm. The primary duty to assure that a load does not shift in transit generally rests with the carrier and its driver. Spence does not dispute this general rule. But where there is evidence that a shipper undertook to load and secure the cargo being transported by a third party carrier, the shipper also bears an obligation to exercise reasonable care. The Pennsylvania Supreme Court recognized this principle in Kunkle. Moreover, this principle is consistent with § 323 of the Restatement (Second) of Torts, a provision that has long reflected the common law of Pennsylvania.

In this case, there was evidence that the shipper, ESAB, undertook not only to load the cargo, but also to supply the securement devices and to express an assurance that this method of securing the load was adequate. If, as in Franklin, a jury finds that ESAB participated in not only loading, but also securing its welding supplies, then the jury would have to determine whether ESAB exercised due care. Thus, because it undertook the task of furnishing securement devices and

23

assuring a skeptical driver that such devices were adequate, ESAB cannot be absolved of liability at the summary judgment stage. Whether ESAB breached its duty of care and, if so, whether Spence was negligent as well are matters committed to resolution by a jury. Accordingly, we will vacate the District Court's entry of summary judgment in favor of ESAB on Spence's general negligence and breach of an assumed duty claims, affirm the entry of summary judgment in favor of ESAB on Spence's negligent failure to warn and fraudulent/negligent misrepresentation claims, and remand for further proceedings consistent with this decision.