**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3529
_____

HECTOR HUERTAS,
                                        Appellant

v.

RAYMOND J. SOBINA, SUPERINTENDENT;
DAN HENRY, MAILROOM SUPERVISOR;
DORINA VARNER, CHIEF SECRETARY
OF INMATE GRIEVANCES

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1-09-cv-00139)
District Judge:  Honorable Sean J. McLaughlin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 20, 2012

Before:  SCIRICA, GREENAWAY, JR., and VAN ANTWERPEN , Circuit Judges

(Opinion filed: April 20, 2012)

_____

OPINION
_____

PER CURIAM

Hector Huertas, a Pennsylvania prisoner, appeals from the District Court's order

granting summary judgment in favor of Defendant-Appellee Dan Henry, against whom Huertas filed a complaint under 42 U.S.C. § 1983. For the reasons that follow, we will affirm.

I

At all times relevant to this action, Huertas was a prisoner confined in the restricted housing unit ("RHU") at the State Correctional Institution in Albion, Pennsylvania ("SCI-Albion"). In 2009 Huertas filed a complaint under 42 U.S.C. § 1983 against three Pennsylvania Department of Corrections employees: SCI-Albion Superintendent Raymond Sobina; Chief Secretary of Inmate Grievances Dorina Varner; and SCI-Albion mailroom supervisor Dan Henry. The defendants filed a motion to dismiss, which the District Court granted in part. As a result, Sobina and Varner were dismissed from the action, leaving only two claims against Henry.

With regard to the remaining claims against Henry, Huertas first alleged that on three separate occasions (in January, February, and August 2008), Henry opened, read, and returned to Huertas letters that he had written to his bank. Huertas alleged that this conduct violated his First Amendment rights. Thereafter, Huertas filed a number of administrative grievances related to the perceived problems with his mail. Second, Huertas alleged that because he pursued these complaints, Henry unlawfully retaliated against him by interfering with and taking contents from his mail.

After the parties completed discovery, during which Huertas was deposed, Henry filed a motion for summary judgment, which the District Court granted over Huertas's

2

objections.  Huertas now appeals from that decision.[1]

## II

We have jurisdiction pursuant to 28 U.S.C. § 1291, and may affirm on any grounds supported by the record.  See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001).  "Our review of a district court's grant of summary judgment is plenary, and we must apply the same standard the district court was required to apply under Federal Rule of Civil Procedure 56[]."  Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010).  "Thus, we can affirm only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  Id. (quoting former Fed. R. Civ. P. 56(c)(2)).  "A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Id. "In evaluating the evidence, we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Id. (internal quotation marks and citations omitted).

With regard to Huertas's claims that Henry interfered with his three letters to the bank, the District Court reasoned that summary judgment was appropriate because there was no evidence in the record that Henry was personally involved in the alleged mishandling of the letters.  We agree.  "'A[n individual government] defendant in a civil

---

[1]  Huertas raises no challenge to the District Court's earlier order dismissing his action against Sobina and Varner.

rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). As the District Court explained in some detail, the evidence in the record -- particularly Huertas's deposition answers -- demonstrated that, as an RHU resident, Huertas had no first-hand knowledge of what took place in the mailroom, and that he was unable to produce any evidence whatsoever showing that Henry interfered with the bank letters, directed his subordinates to do so, or acquiesced in any misconduct.[2]

Likewise, the District Court properly granted summary judgment with respect to Huertas's retaliation claim. Prison officials may be held liable for retaliatory conduct that was motivated "'in substantial part by a desire to punish [the prisoner] for exercise of a constitutional right,'" Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)), such as filing lawsuits and grievances related to the conditions of incarceration. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

---

[2] In the same vein, we agree with the District Court that two general statements Henry made to Huertas in 2006 and 2007 that he "inspect[s] RHU mail and you receive more than any other inmate down there," and that he "handles the RHU mail" were insufficient to create a genuine issue of material fact as to whether Henry mishandled Huertas's letters to the bank in 2008.

4

To prevail on a retaliation claim, the prisoner must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Here, Huertas alleged that because he pursued administrative grievances, Henry: (1) took photographs from a letter sent by Huertas's brother; (2) interfered with Huertas's receipt of a magazine subscription and related correspondences; (3) interfered with letters to and from a pen pal service Huertas subscribed to; (4) took letters and photographs sent by and to Huertas's friend in England; and (5) confiscated and returned to Huertas's relatives an unspecified amount of funds they had sent to Huertas.

In rejecting Huertas's retaliation claim, the District Court concluded that Huertas failed to present any evidence creating a genuine issue of material fact as to whether Henry was personally involved in the purportedly retaliatory mishandling of Huertas's mail. In reaching this conclusion, however, the District Court overlooked Huertas's allegation -- supported by two fellow inmates' affidavits -- that, on one occasion, Henry responded to Huertas's inquiry about missing photographs by stating that Huertas would not get his photographs if he continued filing grievances. See D. Ct. Doc. No 4, 4, 12; D. Ct. Doc. No. 71-2, 39. The affidavits, along with Huertas's deposition testimony, were arguably sufficient to establish a genuine issue of material fact with respect to whether Henry engaged in retaliatory conduct.

5

Even so, the record presents a separate basis to affirm the District Court's decision. That is, assuming arguendo personal involvement by Henry, the purported conduct -- interfering with Huertas's personal mail, confiscating his photographs, and interfering with his receipt of funds -- was not sufficiently adverse to deter a person of ordinary firmness from pursuing grievances. Simply put, more serious conduct is required to make out a retaliation claim under § 1983.[3] Compare Haynes v. Stephenson, 588 F.3d 1152, 1156 (8th Cir. 2009) (filing of a disciplinary charge in retaliation for inmate filing a grievance is adverse for purposes of § 1983 claim), Rauser, 241 F.3d at 333 (inmate presented evidence of adverse retaliatory conduct where he showed "that he was denied parole, transferred to a distant prison where his family could not visit him regularly, and penalized financially" when his prison employment pay grade was reduced to the lowest possible level), and Allah, 229 F.3d at 225-26 (inmate sufficiently alleged adverse retaliatory conduct, where he claimed he was placed in administrative

---

[3] We note that, in an order dated November 21, 2011, we instructed the parties to address in their briefs this very issue. To his credit, Huertas complied with our instruction, although the primary case upon which he relies, Hawkins v. Brooks, 694 F. Supp. 2d 434 (W.D. Pa. 2010), is readily distinguishable. In Hawkins, the district court was presented with a situation that was considerably more serious than that faced by Huertas -- Hawkins, a female inmate, alleged that she was raped and impregnated by a guard; she alleged that after she filed charges against the officer involved, other officers not only withheld incoming mail, but they withheld outgoing mail to the courts and to attorneys from whom she sought representation. See id. at 441-43.

On the other hand, and regrettably, the Attorney General's Office, representing Henry, neglected our briefing instruction altogether.

segregation and confined to his cell for all but five hours per week, which severely limited his access to the commissary, recreation, rehabilitative programs, and legal research materials and assistance), with Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011) (a misconduct charge against a prisoner -- which was later dismissed -- for filing a false report was not sufficiently adverse to serve as the basis of a retaliation action), and Jones v. Greninger, 188 F.3d 322, 325-26  (5th Cir. 1999) (change in prisoner's employment, which limited his access to the prison law library to five hours per week, was not adverse for purposes of a retaliation claim).  No reasonable jury could find that the acts alleged here were sufficiently serious to deter a person of ordinary firmness from exercising his rights.

Accordingly, we will affirm the District Court's order.