**ALD-162**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4622
_____

TYRONE WHITE,
                                          Appellant
v.

PLANNED SECURITY SERVICES;
DINO IULIANO; CARL STOFFER, regional manager;
CARLOS BROWN, site manager; RODNEY JONES, site manager;
ASHTON JONES, concierge; MARY GALGON, property manager
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 10-cv-02017)
District Judge:  Honorable C. Darnell Jones, II
_____

Submitted for Possible Summary Action Pursuant to
Third Circuit LAR 27.4 and I.O.P. 10.6
April 19, 2012
Before:  SLOVITER, FISHER and WEIS, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 3, 2012)
_____

OPINION
_____

PER CURIAM.

     Appellant Tyrone White, proceeding pro se, appeals from the District Court's

order granting the defendants' motion for summary judgment.  Because the appeal does

1

not present a substantial question, we will summarily affirm. See 3d Cir. LAR 27.4; 3d Cir. I.O.P. 10.6.

## I.

In May 2010, White, an African-American male, filed in the District Court a complaint alleging that his former employer, Planned Security Services ("PSS"), unlawfully discriminated and retaliated against him because of his gender, age, and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*

As explained in the defendants' undisputed statement of material facts, PSS contracts to provide safety and security services for commercial and residential facilities, including The Arts Condominium, a residential building in Philadelphia. White joined PSS as a concierge at The Arts in 2006. He was supervised by defendant Carlos Brown, an African-American male.

During his shifts, White often worked with Jeffrey Glencamp, an African-American male with whom White did not get along. On a number of occasions, residents of The Arts complained to White's supervisors about his arguments with Glencamp, as well as White's refusals to comply with residents' requests. On June 14, 2008, White instigated a very loud argument with Glencamp while at work. The following day, Brown removed White from the work schedule. Although defendant Stoffer, a former PSS regional manager, offered to meet with White to discuss why he was removed from

the work schedule, White refused. Thereafter, Stoffer, Brown, and defendant Mary Galgon, the former property manager, collectively decided to terminate White's employment with PSS effective June 28, 2011. At the time of White's termination, PSS employed approximately 10 individuals at The Arts, all of whom were African-American.

White alleged few facts in his complaint. He alleged that Carlos Brown and Carl Stoffer, who is Caucasian, retaliated against him because he wanted to file a report against Brown for repeatedly borrowing money from people and failing to repay it. White further alleged that two PSS employees -- Ashley Jones and Jeanette Collier, both African-American women in their early 20s -- had significant tardiness records, but were not similarly terminated. White also alleged that co-worker Ashton Jones was not disciplined, although White failed to explain why Jones should have been disciplined.

In his deposition, White elaborated that he believed he was wrongfully terminated despite having a perfect attendance record at work, and he speculated that he would not have received that treatment if he were younger, given that Ashley Jones and Jeanette Collier were not fired despite poor attendance records. White also contended that Glencamp and his nephew were treated more favorably than he was, as they were permitted to work the same shift, despite the fact that Glencamp's nephew was ultimately fired by PSS. White did not allege that Galgon or defendants Ashton Jones and Dino Iuliano retaliated or discriminated against him in any way.

3

After the defendants completed discovery,[1] they filed a motion for summary judgment, which the District Court granted. White now appeals that decision.

**II.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. We may summarily affirm if White does not raise a substantial question on appeal, see 3d Cir. LAR 27.4; 3d Cir. I.O.P. 10.6, and we may affirm on any basis supported by the record. See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001). "Our review of a district court's grant of summary judgment is plenary, and we must apply the same standard the district court was required to apply under Federal Rule of Civil Procedure 56[]." Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010). "Thus, we can affirm only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Id. (quoting former Fed. R. Civ. P. 56(c)(2)).

Title VII prohibits an employer from discharging an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As White lacks direct evidence of such discrimination, his claim falls under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S 792 (1973). Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of unlawful discrimination or retaliation. See id. at 802. This requires a plaintiff to show that (1) he belongs to a protected class; (2) he was qualified for his

---

[1] White did not seek any discovery.

position; and (3) he was terminated under circumstances that give rise to an inference of unlawful discrimination.[2] See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-411 (3d Cir. 1999). If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. See McDonnell Douglas, 411 U.S. at 802. Once the employer meets this "relatively light burden," Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), the burden of production returns to the plaintiff, who can defeat summary judgment only by showing by a preponderance of the evidence that the employer's stated reason is pretextual. See id. Accordingly, once an employer has stated a legitimate and nondiscriminatory reason, the plaintiff must produce evidence that either "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of" the termination. Id. at 762. Because the ultimate issue is whether "discriminatory animus motivated the employer," it is not enough to show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations omitted). Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanations that would permit a reasonable factfinder to believe that the employer did not actually act for

---

[2] Courts apply the McDonnell Douglas framework in evaluating claims arising under the ADEA and PHRA, as well. See Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (ADEA); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (PHRA).

5

its stated reasons.  Id.

In granting summary judgment, the District Court reasoned that (1) White failed to present any circumstances that gave rise to an inference of unlawful discrimination on the grounds of his age, race, or gender, and (2) even if White could make out a prima facie case of discrimination, he had not produced any evidence that cast doubt on the veracity of PSS's stated reasons for his termination.  We need not address whether White made out a prima facie of discrimination because we agree with the District Court that, even if he had done so, White failed to rebut PSS's stated legitimate nondiscriminatory reasons for terminating his employment  -- i.e., his admitted public altercation with Glencamp and his failure to correct his behavior despite repeated warnings.

Further, the District Court correctly granted summary judgment on White's retaliation claim.  To prevail on a retaliation claim under Title VII, a plaintiff must show that "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action."  Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).  There is no evidence in the record, aside from White's bare allegation, that his termination resulted from his complaint that Carlos Brown borrowed money from colleagues without repaying it.  And to the extent that White's PHRA retaliation claim could be viewed as arising under the "public policy exception" to Pennsylvania's at-will employment doctrine, he has not identified any basis in Pennsylvania law to invoke that narrow exception.  See McLaughlin v. Gastrointestinal

6

Specialists, Inc., 750 A.2d 283, 287-89 (Pa. 2000) (employee's termination subsequent to making internal complaints to her employer did not implicate Pennsylvania's public policy concerns).

Accordingly, we will summarily affirm.