**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2605
_____

SMAIL IMPORTS INC;
LMJ II INC,

Appellants

v.

RMJ, MOTORS, INC; NR REALTY 4, LLC;
HYUNDAI MOTOR AMERICA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cv-00109)
District Judge: Hon. J. Nicholas Ranjan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 10, 2022

Before: CHAGARES, *Chief Judge*, AMBRO and FUENTES, *Circuit Judges*.

(Opinion filed : August 4, 2022)
_____

OPINION*
_____

FUENTES, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Like many before it, this case arises from a deal gone bad. Defendant-Appellee RMJ Motors, Inc. ("RMJ") terminated an Asset Purchase Agreement for the sale of its Hyundai dealership to Plaintiff-Appellant Smail Imports Inc. ("Smail"). As a result, Defendant-Appellee NR Realty 4, LLC ("NR Realty") canceled its contingent agreement with Plaintiff-Appellant LMJ II, LLC ("LMJ") to sell the land on which the dealership sat. When the agreements fell apart, Smail and LMJ sued RMJ, NR Realty, and Defendant-Appellee Hyundai Motor America ("Hyundai"). The parties eventually cross-moved for summary judgment, and the District Court ruled in favor of Defendants-Appellees.

Smail and LMJ now appeal that adverse ruling. Because we see no error in the District Court's decision, we will affirm.

## I.

Smail was created by Smail Auto Group, a Western Pennsylvania auto group comprised of six dealerships, to acquire a Hyundai dealership from RMJ. Smail Auto Group's part-owner, Mark Smail, managed the purchase along with Chief Financial Officer Cynthia Warsing. On July 24, 2019, Smail and RMJ entered into an Asset Purchase Agreement (the "Agreement") detailing the terms of the transaction. LMJ and NR Realty entered into a separate agreement for the sale of the property on which the dealership sat, contingent upon the closing of the dealership transaction.

Before Smail could acquire the dealership from RMJ, it needed the consent of Hyundai, the manufacturer. Under the Pennsylvania Board of Vehicles Act ("BVA"),

2

Hyundai had 60 days to respond to Smail's request for consent once Smail submitted certain information.[1]  Complicating matters was the fact that, under Section 9.1(d) of the Agreement, RMJ could terminate the transaction if Smail failed to complete its application to Hyundai within 75 days of the Agreement's signing—by October 8, 2019.

On August 6, 2019, Ted Lytle, a Senior Manager of Market Representation and Dealer Development for Hyundai, sent Smail an email giving it access to an online portal through which it could submit documents required as part of its application for consent. Lytle's email also contained specific instructions on some of the information Hyundai was requesting, including: "Financial Statements: Please provide personal statements for all owners.  Please also provide current and 2 years prior Business Financial statements for any competitive franchises/dealerships or other business owned (if applicable)."[2]

Warsing was the Smail employee responsible for compiling the documents requested by Hyundai.  She called Lytle for clarification about what financial statements were required "in [Smail's] scenario," given the short history of the newly-formed Smail entity.[3]  Lytle instructed her that a two-year history would not be required for Smail. Warsing did not ask Lytle about the financial statements that Hyundai had requested for the owners' other companies, including Smail Auto Group's other "franchises/dealerships."[4]

---

[1] *See* 63 Pa. C.S. § 818.310(b)(5).
[2] Joint Appendix ("JA") at 000102a.
[3] JA000427a at 110:5–110:11.
[4] JA000102a.

On August 28, 2019, Smail submitted its application through Hyundai's online portal. The application included the following one-page financial statement about Smail: "Smail Imports, Inc. d/b/a Smail Hyundai is was [sic] formed June 19, 2019 for the purpose of acquiring and holding Mike Camlin Hyundai. There is no financial history for this entity. As such, there are no financial statements."[5] The application did not include financial statements for Smail Auto Group's other dealerships, despite the instruction in Lytle's email requiring that information.

Smail planned to close its deal with RMJ on October 15, 2019, but when Smail had not received Hyundai's consent to the transaction a few days before closing, the parties rescheduled to a November 4 closing. On October 23, a Hyundai representative informed Mark Smail that Smail's application lacked the requested financial statements for the other dealerships. Warsing submitted the missing information on October 23 and 24. But by the rescheduled closing date, Hyundai still had not consented to the transaction. The next day, November 5, 2019, RMJ sent Smail a letter terminating the deal under Section 9.1(d) of the Agreement. As a result, the contingent land deal between NR Realty and LMJ was also terminated.

Smail and LMJ sued RMJ and NR Realty in Pennsylvania state court for breaching (1) the Agreement and (2) the contingent land agreement. When the defendants removed the case to federal court, Smail and LMJ filed an amended complaint

---

[5] JA000755a.

adding a third claim: that Hyundai's failure to respond to Smail's August 28, 2019 application for consent within 60 days violated the BVA.

After discovery, the parties cross-moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. The District Court found that Hyundai did not violate the BVA because the relevant section required Smail to submit a complete application inclusive of all information originally requested before Hyundai's 60-day response clock began to run. Because Smail's original application did not include the financial information that Hyundai had requested for Smail Auto Group's other dealerships, its application was not complete until it submitted that information in late October. The District Court accordingly held that, under the BVA, Hyundai still had time to respond to Smail's request for consent when RMJ terminated the transaction on November 5, 2019. The Court also held that RMJ's termination was valid under the Agreement because Smail had failed to complete its application to Hyundai within 75 days of signing, thus allowing RMJ's termination option to vest. The District Court accordingly granted summary judgment in favor of Defendants-Appellees. Smail and LMJ timely appealed.

## II.[6]

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment and apply the same standard as the District Court. *Razak v. Uber Techs.*, 951 F.3d 137, 144 (3d Cir. 2019). A party is entitled to summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might

5

On appeal, Smail and LMJ argue that the District Court erred in finding: (1) that Hyundai did not violate the BVA's 60-day response provision, and (2) that RMJ's termination of the Agreement was valid. We address each argument in turn.

A.

Smail and LMJ first challenge the District Court's finding that Hyundai did not violate the BVA's 60-day response provision. The relevant section of the BVA makes it a violation for any manufacturer to: "Fail to respond in writing to a request for consent . . . within 60 days of receipt of a written request on the forms, if any, generally utilized by the manufacturer . . . for such purposes and containing the information required."[7] This section also states that if a manufacturer "requires additional information to complete its review, the manufacturer . . . shall notify the applicant within 15 days of the receipt of the forms."[8] If a manufacturer fails to respond to a buyer's request for consent by the statutory deadline, it is deemed to have approved the request and must deliver a franchise to the buyer within 30 days.[9]

Smail and LMJ argue that the District Court misread this provision in ruling for Hyundai. They argue that the 60-day clock begins to run when a buyer submits the forms provided by a manufacturer, even if the buyer fails to provide other information that the

_____

affect the outcome of the suit under the governing law." *Id.* A court reviewing a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party. *Razak*, 951 F.3d at 144. "The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

[7] 63 Pa. C.S. § 818.310(b)(5).

[8] *Id*.

[9] *Id*.

manufacturer initially requested as part of the application. That is because, according to Smail and LMJ, "[t]he Act places the onus on the manufacturer to create forms containing all the information that it needs to complete its review."[10] They further contend that if a manufacturer requires other, "non-form" information, it must request that information in the 15 days following the submission of the initial forms.[11] Smail and LMJ therefore argue that the 60-day clock began to run in this case on August 28, 2019, when Smail submitted its application on the "forms" Hyundai provided through its online portal, even though Smail failed to submit other initially requested information—the financial statements for Smail Auto Group's other franchises/dealerships—until October.

Like the District Court, we find Smail and LMJ's interpretation of the statute unpersuasive.[12] For one, Smail and LMJ's reading of the statutory language gives short shrift to the phrases "forms, *if any*" and "containing the information required."[13] As the District Court noted, the phrase "forms, if any" indicates that although manufacturers are permitted to use forms to collect information from potential buyers, they are not required to do so. Smail and LMJ's interpretation—that manufacturers can *only* request information on forms—would mean that forms are effectively required, rendering the "if any" language obsolete. And what about the phrase "containing the information required"? Smail and LMJ argue that this language modifies "forms" and means that the

---

[10] Plaintiffs-Appellants' Opening Br. at 36.

[11] *Id*. at 30 n.5, 35.

[12] Because the Supreme Court of Pennsylvania has yet to clarify the meaning of this particular provision of Pennsylvania law, our task is to "predict how it would rule if faced with the issue." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010).

[13] 63 Pa. C.S. § 818.310(b)(5) (emphasis added).

statutory deadline will not be triggered by "an incomplete or blank form."[14]  But that is already implied, rendering this language obsolete as well under their reading.  We think that the better interpretation of the statute is the one that "give[s] effect to all its provisions":[15] that a buyer's written request for consent must contain "the information required" by the manufacturer to trigger the 60-day response clock, whether or not forms are used.[16]

Moreover, Smail and LMJ's reading of the word "forms" is too narrow and would produce unreasonable results if accepted.[17]  Under their interpretation, the word "forms" means only blank documents created by a manufacturer for a buyer to fill out and excludes any original or pre-existing documents, including any financial statements on record with the buyer.  This would mean that, if manufacturers want to request any information from potential buyers upfront, they would have to create their own "forms" to do so rather than simply requesting copies of the same information in its native format.  We do not think that the General Assembly intended to create such an unnecessarily burdensome process.  Smail and LMJ's reading of the word "forms" would also prevent

---

[14] Plaintiffs-Appellants' Opening Br. at 30.

[15] 1 Pa. C.S. § 1921(a).

[16] 63 Pa. C.S. § 818.310(b)(5).  In addition to the District Court below, at least one other district court in our circuit has come to the same conclusion.  *See Brooks Auto. Grp., Inc. v. Gen. Motors LLC.*, No. 2:18-cv-00798-MJH, 2020 WL 2309247, at *4 (W.D. Pa. May 8, 2020) (explaining that "an informed decision process cannot begin until the required initial information has been provided" and that the BVA accordingly "allows for manufacturers to prescribe the initial required information.").

[17] *See* 1 Pa. C.S. § 1922(1) (creating a presumption for purposes of statutory interpretation that the Pennsylvania General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable").

manufacturers from requesting information in its original format as a way to verify the accuracy and authenticity of the information requested. We find it unlikely that the General Assembly intended to strip manufacturers of the ability to conduct basic due diligence by reviewing financial statements and other original documents before consenting to a deal.

And although Smail and LMJ argue that manufacturers can still request supplemental, "non-form" information—like the financial statements requested in this case—within 15 days of the receipt of the initial forms, there is a problem: the BVA states that "[i]n no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms."[18] This means that, under Smail and LMJ's interpretation, there is no guarantee that manufacturers will ever get to see information outside of forms they personally create before having to provide an answer to a potential buyer under the statute. We think the more sensible interpretation of the BVA is the one the District Court adopted: that the financial statements Hyundai initially requested from Smail were part of the "forms . . . generally utilized by the manufacturer" that Smail needed to submit to trigger Hyundai's duty to respond within 60 days.[19]

Finally, Smail and LMJ argue that even if this interpretation of the statute is correct, the District Court erred in granting summary judgment to Defendants-Appellees because Smail submitted all required information by August 28, 2019. In so arguing, Smail and LMJ point to the phone conversation in which Ted Lytle instructed Cynthia

---

[18] 63 Pa. C.S. § 818.310(b)(5).
[19] *Id.*

Warsing about the information that Smail was required to submit. But, as Warsing acknowledged in her deposition testimony, that conversation only addressed the financial documents required of *Smail*. The conversation did not alter Lytle's earlier email instruction that Smail submit financial statements for Smail Auto Group's "competitive franchises/dealerships or other business[es] owned."[20] Thus, even when viewed in the light most favorable to Smail and LMJ, the record shows that the application Smail submitted to Hyundai on August 28, 2019 was incomplete. No reasonable jury could find otherwise.[21]

For these reasons, we agree with the District Court that Hyundai's 60-day response clock under the BVA did not begin to run until October 24, 2019, when Smail submitted the information that was missing from its initial application. Because Hyundai still had time left to respond to Smail's application when RMJ terminated the deal in early November, Hyundai did not violate the BVA.

### B.

Smail and LMJ's second argument is that the District Court erred in determining that RMJ validly terminated the Agreement. The problem with this argument is that it is based on a premise we just rejected: that Smail's application to Hyundai was complete in August 2019.

In terminating the Agreement on November 5, 2019, RMJ relied on Section 9.1(d). That section allowed either party to terminate the agreement "if the condition in Section

---

[20] JA000102a.
[21] *Liberty Lobby*, 477 U.S. at 248.

10

5.5 (Manufacturer Application and Other Actions) ha[d] not been obtained on or before seventy-five (75) days" from July 24, 2019, the date of the Agreement's signing.[22] Section 5.5 in turn required the parties to, among other things, "take all appropriate actions in connection with [] the application to the Manufacturer for approval of the transactions contemplated" in the Agreement.[23]  Although the parties dispute the scope of this provision, Smail and LMJ acknowledge that Section 5.5 required Smail to at least submit a completed application to Hyundai.  Smail and LMJ therefore concede that Section 9.1(d) gave RMJ the right to terminate the Agreement if Smail failed to submit a completed application to Hyundai by October 8, 2019.

That is the end of the road for this issue.  Although Smail and LMJ argue that Smail's application to Hyundai was complete on August 28, 2019, that argument fails for the reasons we have already discussed.  Instead, the record shows that Smail did not complete its application until October 24, 2019, when it submitted the last of the requested financial documents.  RMJ was therefore within its rights to terminate the Agreement on November 5, 2019, as the District Court found.

III.

For these reasons, we will affirm the order of the District Court granting summary judgment to RMJ, NR Realty, and Hyundai on Smail and LMJ's claims.

---

[22] JA000067a.
[23] JA000056a.

11